McNAMARA GOLDSMITH
A Professional Corporation
1670 E. River Road, Suite 200
Tucson, Arizona 85718
(520) 624-0126
(520) 624-9238 - FAX

Michael F. McNamara, SBN 011277
E-mail:  mfm@mgm-legal.com
María del Pilar Mendoza, SBN 024740
E-mail: pm@mgm-legal.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KATHLEEN MOORE, a single woman, individually, and as Personal Representative of the Estate of James Michael Moore, Deceased;<br><br>Plaintiff,<br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA, a foreign corporation; CIGNA INSURANCE AGENCY, LLC, a foreign corporation; AmWINS GROUP BENEFITS, INC., f/k/a NATIONAL EMPLOYEE BENEFITS COMPANIES, INC., a foreign corporation; BORDER STATES INDUSTRIES, INC., d/b/a BORDER STATES ELECTRIC, a foreign corporation; BORDER STATES ELECTRIC PLAN; XYZ CORPORATIONS I-III; ABC PARTNERSHIPS I-III; JOHN and JANE DOES I-III,<br><br>Defendants. | NO.<br><br>**COMPLAINT  FOR ERISA VIOLATIONS; ERISA BENEFITS DENIED; BREACH OF FIDUCIARY DUTY, BREACH OF A.R.S. § 20-1269, CONSUMER FRAUD**<br><br>**(Tort-Non-Motor-Vehicle)**<br><br>**Assigned to:** |

Plaintiff, Kathleen Moore, individually, and as Personal Representative of the Estate of James Michael Moore, Deceased ("Kathleen"), as and for her Complaint against Life Insurance Company of North America ("LICNA") , CIGNA Insurance Agency LLC ("CIGNA"),  AmWINS Group Benefits, Inc., formerly known as National Employee Benefits Companies Inc, a foreign

1

corporation ("NEBCO"), Border States Industries, Inc., dba Border States Electric. ("BSE"), Border States Electric's Life Insurance Benefits Plan ("the Plan"), XYZ Corporations I-III; ABC Partnerships I-III; and John and Jane Does I-III, collectively ("Defendants"), and allege as follows:

1. The United States District Court has jurisdiction over this action pursuant to ERISA § 502 (e)(1), 29 U.S.C. § 1132(e)(1); and 28 U.S.C. § 1331.

2. Venue is proper as the Plan was administered in this District, the breach took place in this District, the Plaintiff is an Arizona resident, and James Moore worked for BSE in Arizona.

3. With regard to the Plaintiff's state law claims pursuant to A.R.S. § 20-1251 *et seq.*, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. BSE is a foreign corporation based in Fargo, North Dakota, but doing business in Arizona. BSE employs Arizona residents, conducts ongoing business within Arizona, and therefore, may be found within Arizona

5. BSE was James Moore's ("James") employer.

6. LICNA is a wholly owned and subsidiary of CIGNA. LICNA was the insurance company that provided the Group Life Insurance Plan to BSE of which James Moore was a beneficiary. Since, April 1, 1957, LICNA has been registered as a foreign corporation with the State of Arizona, has extensive contacts with the State of Arizona, conducts ongoing business within the State of Arizona, and therefore, may be found within the State.

7. CIGNA is a foreign L.L.C. with a domicile in Connecticut and doing business in Arizona.

8. NEBCO is a foreign corporation with a domicile in Rhode Island and doing business in Arizona.

9. NEBCO administered for CIGNA and LICNA BSE's life insurance benefits plan.

10. Kathleen is James' widow and an Arizona resident. Kathleen is also the Personal Representative of her husband's Estate.

11. Upon information and belief, at all times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by James' employer, BSE, administered and funded, in part or in whole, by LICNA, CIGNA, NEBCO, and BSE.

12. Defendants, and each of them, caused events to occur in Pima County, Arizona, out of which this Complaint arises.

13. Upon information and belief, Defendants ABC Partnerships I-III, are Arizona or foreign general or limited partnerships whose identities are presently unknown to Plaintiff, and who committed some or all of the acts complained of herein.

14. Upon information and belief, Defendants John Does III-VI and Jane Does I-III, are individuals or married couples whose identities are presently unknown and not reasonably ascertainable to Plaintiff, and who committed some or all of the acts complained of herein.

15. All acts complained of herein were done by Defendants or by their authorized agents in the course and scope of their employment or agency, and as to married individuals, were done in furtherance of their respective marital communities.

**General Allegations**

16. James participated in BSE's life employee benefits plans, including the life insurance plan insured by LICNA and CIGNA under policy number FLX 962801.

17. Upon information and belief, BSE self-administered the Plan.

18. Kathleen is the beneficiary of James' life insurance policy.

19. BSE provided James with a basic group life insurance policy benefit. The basic benefit was 1.5 times James' annual compensation rounded to the next higher $1,000, if not already a multiple thereof.

20. James added voluntary benefit coverage of $100,000 for him and $25,000 for his wife Kathleen.

21. In August, 2013, James was diagnosed with liver cancer. James used his short-term and long-term disability benefits he had under BSE's Plan.

22. James applied and paid all premiums to continue his short-term and long-term Disability Coverage with LICNA and CIGNA.

23. The Life Insurance policy had an "Accelerated Benefits" provision. The Accelerated benefits provision reduces the death benefit payable for life insurance.

24. Under the policy, "Any benefits payable under this Accelerated Benefits provision will reduce the Death Benefit payable for life Insurance. Any automatic increases in Life Insurance benefits will end when benefits are payable under this provision."

25. Under the policy, a Terminal Illness Benefit is an Accelerated Benefit. The policy provides:

> We will pay a Terminal Illness Benefit if we determine you or your Spouse are Terminally Ill. The amount of this benefit is 75% of the Life Insurance in effect for you or your Spouse on the date we determine you are Terminally Ill up to the Maximum Benefit Amount shown in your Schedule of Benefits for this option. The Terminal Illness Benefit is payable only once in an Insured's lifetime.

26. On March 27, 2014, James applied for the accelerated benefit under basic Life Insurance.

*James and his work at BSE*

27. James was a valued employee; he worked for BSE for over 20 years.

28. BSE provided James with a flexible schedule after his diagnosis in 2013. James worked as much as he was able given his terminal illness.

29.     James continued to work until April 1, 2014, when he officially retired from his job. At that time, BSE hired a replacement for James' position.

30.     James had a hard time accepting his terminal illness diagnosis and asked BSE if he could continue working part-time. James had long-time friends at work and felt useful trying to work and spending his time with his colleagues.

31.     Despite James' hopes to continue to work, he could never even work a complete day after April 1, 2014. James was struggling with difficulties concentrating, dealing with the pain and going to medical appointments and necessary treatments. Going to work was a needed emotional tool for James and his hopes of beating his cancer.

*The Progression of James' Cancer*

32.     In March 2014, James' doctors informed Kathleen and James that the chemotherapy cancer treatment was not working and the cancer had spread.

33.     James and Kathleen knew James was terminally ill in March 2014, and the chances of survival were very slim.

34.     In April 2014, James underwent a second round of liver directed therapy in an effort to halt the cancer's growth. These treatments began in April, 2014.

35.     James never recovered from the second round of liver directed therapy. From that moment on, James suffered from several complications that required medical procedures.

36.     During April and May 2014, James was rapidly deteriorating and required many medical procedures, including endoscopies and biopsies.

37.     Beginning in May 2014, James had a gradual decline in his performance secondary to the malignancy of the cancer. James also experienced a decline in his mental functions with episodes of poor alertness.

38. In June 2014, James began a new round of chemotherapy.

39. In June 2014, James' treating physicians informed James and Kathleen that James' survival was measured in weeks.

40. James began hospice care at home in July 2014, and died on September 11, 2014.

<u>CIGNA and LICNA's Insurance Correspondence</u>

41. On April 14, 2015, James completed the paperwork to port his life insurance, given he was now a retired employee and he knew he was terminally ill.

42. The portability form James completed had a section to be completed by BSE. BSE completed that portion of the form and wrote that James' last day of work as an employee was March 31, 2014. (*See* attached Exhibit 1, Bate Stamp Nos. MOORE00001-00002.)

43. The portability form shows that James had a $93,000 basic life insurance and a $100,000 voluntary coverage for him and $25,000 voluntary coverage for his spouse.

44. On the portability form, James named Kathleen as a 100% beneficiary of his life insurance policy.

45. On the portability form, James checked the section where it showed that he had applied for Accelerated benefits under the insurance on March 27, 2014.

46. James wanted to continue his life insurance and timely submitted the portability form to CIGNA.

47. Under the policy, that application for accelerated benefits reduced the amount of basic life insurance provided by BSE.

48. On the portability form, James checked that he wanted to continue his wife's Life Insurance coverage.

49. On correspondence dated May 29, 2014, CIGNA through NEBCO informed James they had received the completed form but that he failed to check a box where he showed what amount of coverage he would continue. (*See* Exhibit 1, Bate Stamp No. MOOR00003.)

50. The May 29, 2014, correspondence failed to acknowledge that James had applied for the terminal illness accelerated benefit and how that affected his life insurance benefits.

51. The letter created an additional deadline. The letter reads:

> "Should you wish to continue coverage on yourself and your spouse please initial and date any changes made to your application and resubmit to our office no later than June 29, 2014."

Exhibit 1.

52. Upon information and belief, in April 2014, CIGNA paid James his terminal illness benefit.

53. The May 29, 2014 letter arrived at James and Kathleen's home when James was not doing well and his survival was counted in weeks.

54. The May 29, 2014 letter gave James less than 30 days after receipt of the letter to resubmit the application.

55. Kathleen saw the letter from CIGNA in June, 2014. James Moore signed the form in Tucson, Arizona, on June 29, 2014. This signature occurred within the unilaterally manufactured deadline in the May 29, 2014 letter.

56. BSE's representative, Mary Anne VonBank, signed the letter in Fargo, North Dakota, on July 2, 2015.

57. Upon information and belief, NEBCO received that form in early July 2015.

58. After mailing the letter to NEBCO, Kathleen contacted NEBCO on more than one occasion to inquire whether they had received the amended form they had requested and to inquire about the insurance premiums.

59. NEBCO employees informed Kathleen all paperwork had been received.

60. Kathleen presented a claim for life insurance benefits to the Plan and CIGNA in a timely manner.

61. On September 22, 2014, CIGNA requested additional forms from Kathleen to process the life insurance claim.

62. On October 27, 2014, CIGNA denied Kathleen's life insurance claim because they received the amended form on July 9, 2015, and not before June 29, 2014.

63. On December 19, 2014, Kathleen appealed CIGNA's decision. Kathleen informed CIGNA that James was not doing well in June, 2014. Kathleen included a letter from James' treating physician.

64. On April 2, 2015, CIGNA sent correspondence denying Kathleen's appeal and stating that they had received the letter on July 9, 2014.

65. The appeal decision stated that the May 29, 2014 correspondence had a deadline to resubmit the application to CIGNA by June 29, 2014.

66. The Defendants were required to provide James with an adequate notice of his right to exercise his option to convert.

67. The Defendants had obligations to act in good faith, but instead, they created additional deadlines, not included in the policy, for James to port his life Insurance.

68. The Defendants are precluded from denying benefits to Kathleen, because the conversion period and/or the termination of benefits that allegedly occurred on June 29, 2014, was

stayed and/or equitable tolled given James condition as a terminally ill cancer patient. Between April 1, 2014, and September 11, 2014, James was terminally ill and suffering from cancer and its treatments. It is alleged, upon information and belief, that the Plan continues coverage during such terms of terminal disability. The Plan's conversion period of termination date is stayed and/or equitably tolled as a matter of law in cases where a terminally ill patient, who may be in a state of incapacitation, is unable to elect continued Life Insurance Coverage. The option of continuing coverage on any of these bases, or any other, was never extended to the Plaintiff by Defendants.

## COUNT I

### [FOR ERISA BENEFITS]

69. Kathleen realleges each and every allegation previously stated as though fully set forth herein.

70. ERISA 502 § (a)(1)(b), 29 U.S.C. 1132 (a)(1)(B) permits a plan participant or beneficiary to bring a civil action to recover benefits due under the plan, to enforce rights under the plan, and/or to clarify his rights to future benefits under the plan.

71. Kathleen is entitled to death benefits arising from James' life insurance policy.

72. At all relevant times, Kathleen has been entitled to Life Insurance Benefits. By denying Kathleen's benefits under the Plan, and by related acts and omissions, Defendants and the Plan have violated and continue to violate the terms of the Plan and Kathleen's rights thereunder.

## COUNT II.

### [BREACH OF FIDUCIARY DUTY AND REQUEST FOR EQUITABLE RELIEF UNDER ERISA § 502(a)(3)]

73. Kathleen realleges each and every allegation previously stated as though fully set forth herein.

74. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action to enjoin any act or practice which violates any provision of ERISA Title I or the terms of the plan, or to obtain any other appropriate equitable relief to redress such violations or to enforce any provisions of the title or the terms of the plan.

75. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104 (a)(1)(D), requires that a fiduciary of an employee benefit plan administer the plan under the documents and instruments governing the plan where such documents and instruments follow ERISA.

76. ERISA § 3 (21)(A), 29 U.S.C. § 1002 (21)(A), provides that a person is a fiduciary regarding a plan to the extent:

    a. He exercises any discretionary authority or discretionary control respecting management of such plan or exercise any authority or control respecting management or disposition of its assets;

    b. He renders investment advice for a fee or other compensation, direct or indirect, regarding any moneys or other property of such plan, or has any authority or responsibility to do so; or

    c. He has any discretionary authority or discretionary responsibility in the administration of such plan.

77. At all relevant times herein, the Defendants served as the Plan's fiduciaries.

78. On or about March 27, 2014, Defendants knew or should have known of James' terminal condition.

79. On or about March 27, 2014, Defendants should have, but failed to take certain practical, common sense and prudent actions to inform and notify James = and/or his wife Kathleen,

regarding their life insurance benefits. Specifically, they should have informed them how James' application for accelerated benefits affected what amount of life insurance James could port.

80. Defendants had a fiduciary duty to appropriately inform of what was necessary to port the life insurance, including premiums James needed to pay to port the insurance.

81. Defendants had a fiduciary duty to appropriately inform James and Kathleen regarding the contents of the portability form and how it should have been completed.

82. Defendants had a fiduciary to cooperate with James and Kathleen in porting their life insurance instead of providing additional steps to prevent them from porting the life insurance.

83. Defendants breached their fiduciary duties to Kathleen, and she was harmed thereby.

## COUNT III.

### [CLAIMS OF INTEREST, ATTORNEY'S FEES PURSUANT TO §§ 1132(a)(3), 1132(g)(1)]

84. Kathleen realleges each and every allegation previously stated as though fully set forth herein.

85. Defendants are responsible to pay Kathleen interest from James' date of death or September 11, 2014, pursuant to 29 U.S.C. § 1132(a)(3).

86. Defendants are responsible to provide Kathleen her reasonable attorney's fees/costs of litigation pursuant to 29 U.S.C. § 1132(g)(1).

## COUNT IV.

### [CLAIM OF LACK OF ADEQUATE CONVERSION NOTICE PURSUANT TO A.R.S. § 20-1269]

87. Kathleen realleges each and every allegation previously stated as though fully set forth herein.

88. BSE's Plan under which James was insured is a plan regulated by A.R.S. § 20-1251 *et. seq*.

89. James had a right to convert his Group Life Insurance Policy into an individual Life Insurance Policy pursuant to the terms of the Plan and A.R.S. § 20-1266.

90. James had a right to written notice from Defendants regarding his right to convert his Group Life Insurance Policy into an individual Life Insurance Policy pursuant to the terms of the Plan and A.R.S. § 20-1269.  That notice needed to explain how the accelerated benefits application affected what portion of the Life Insurance Coverage would be portable.

91. Defendants did not provide James with written notice explaining how the portability form needed to be completed when he also had applied for accelerated benefits, and Kathleen was damaged thereby.

## COUNT V.

## [PLAINTIFF'S REASONABLE EXPECTATIONS]

92. Kathleen realleges each and every allegation previously stated as though fully set forth herein.

93. James knew he was terminally ill and applied for the accelerated benefits option under the policy.  James further completed the portability form within 15 days after retiring.

94. James knew he was terminally ill and made all preparations for this event, he knew he had life insurance with his employer, and had a reasonable expectation that his wife would receive this benefit.

95. Defendants breached their duty to James by failing to provide sufficient information for him to complete the portability form to the Defendants' satisfaction.

96. Defendants failed to provide guidance and appropriate information to Kathleen and James regarding what needed to be completed on the portability form.

97. Defendants knew James wanted to continue his life insurance and that he was terminally ill, but created additional steps to port his life insurance in an effort to later deny his Life insurance benefit.

98. Defendants' breach harmed Kathleen

## COUNT VI.
## [CONSUMER FRAUD]

99. Kathleen realleges each and every allegation previously stated as though fully set forth herein.

100. The Plan and the Policy establish that James needed to complete the portability form and to pay the premium in order to port his life insurance.

101. James completed the portability form within the time limitation and submitted it to CIGNA on April 15, 2014.

102. The Defendants were aware James was terminally ill. He had applied for the accelerated benefits under the policy in March, 2014.

103. The Defendants knew that Kathleen, as James' beneficiary, would make a life insurance claim after her husband's death.

104. The Defendants knew that a portion of the life Insurance was reduced due to the accelerated benefits application, but failed to explain how that affected what portion of the life insurance was portable and how the form needed to be completed.

105. Knowing of James' frail condition, they sent a letter to James dated May 29, 2014, and created an additional deadline for him to provide additional information on the form and denied the claim when he was unable to comply.

106. The Defendants failed to provide James and Kathleen with adequate notice of what they needed to do to continue the life insurance coverage.

107. The Defendants' creation of a new deadline in order to limit or eliminate James' life insurance coverage was unfair and in violation of A.R.S. 44-1521, et. seq.

**WHEREFORE**, Plaintiff is entitled to judgment in her favor and against the Defendants, and each of them, for the following relief:

1. Declare that the Defendants violated the terms of the Plan by denying the Plaintiff's claims for Life Insurance Benefits;

2. Declare that the Defendants violated Arizona law when they failed to provide adequate notice of conversion to James;

3. Order BSE to pay compensatory damages to Plaintiff;

4. Order CIGNA, LICNA and the Plan to pay the Plaintiff's Life Insurance Benefits pursuant to the terms of the Plan;

5. Order the Defendants to pay interest on Plaintiff's past benefits due from the date of death to the date of judgment herein;

6. Award Plaintiff's reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and

7. For other and further relief as the Court determines to be appropriate under the circumstances.

DATED this 11th day of September, 2015.

    McNAMARA GOLDSMITH, P.C.

    By: /s/ Michael F. McNamara_____
        Michael F. McNamara
        Maria del Pilar Mendoza
        Attorneys for Plaintiffs

1  The foregoing document electronically
2  filed with the U.S. District Court, District
   of Arizona, this 11th day of September, 2015.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28